JOHN L. ROPER LUMBER COMPANY v. RICHMOND CEDAR WORKS AND DISMAL SWAMP CANAL COMPANY.

(Filed 3 March, 1915.)

1. **Trespass—Limitation of Actions—Separate Tracts of Land—Adverse Possession—Constructive Possession.**

In an action of trespass, where the party in possession claims title under color by adverse possession to two separate and distinct tracts of land under two deeds separately describing them, his possession of the one is not constructive possession of the other, and possession of each will have to be sufficiently shown in order to ripen the title to them both.

2. **Limitations of Actions—Adverse Possession—Color—Outstanding Titles—Purchase—Evidence.**

A party in possession of lands under a deed may buy in an outstanding claim of title to them without acknowledging paramount title in his subsequent grantor or interrupting the continuity of possession under his first deed; and where adverse possession is sufficiently shown under his first

deed, for the period of time limited, it will ripen his title under color thereof, unless he has in some way been estopped or precluded from doing so.

### 3. Same—Acts and Declarations—Questions for Jury.

Where one claiming title to lands has bought in outstanding titles thereto and claims by adverse possession under his first deed, it is competent to show his acts and declarations as evidence of the character of his possession, and it is for the jury to determine upon all the evidence whether his possession continued to be adverse under the first deed and sufficient to ripen his title into a good and sufficient one during the period fixed by the statute.

### 4. Trials—Instructions—Appeal and Error—Harmless Error.

An erroneous statement of a contention of a party, corrected in the charge of the judge, is harmless error.

APPEAL by defendant from *Whedbee, J.;* at July Term, 1914, of CAMDEN.

Action to recover damages for a trespass on the plaintiff's land, known as the lots numbered 2 and 3 in the New Lebanon Division, which was made in the year 1819. The trespass consisted in cutting roads on the land for the purpose of carting over it, the defendant justifying under a clause contained in the partition decree, reciting that it would be convenient in carting to the Cross Canal for one proprietor to have the free privilege of using the share of other proprietors for that purpose. Plaintiff asked for a restraining order to stop the trespass, which was at first granted, but afterwards vacated, and plaintiff appealed to this Court, when the order was reversed and the injunction directed to be continued to the hearing. 158 N. C., 161. Defendant at first admitted the title of plaintiff to Lots 2 and 3, and set up the right to cross them; afterwards, by amendment, admitted plaintiff's title to Lot No. 2 and formally denied the title to Lot No. 3, and finally, by amendment, denied plaintiff's title to both lots, which defendant alleges was due to the unexpected decision of this Court in *Weston v. Roper Lumber Company,* involving the title to Lots 1 and 4 in said division, as to the estoppel of a judicial partition between tenants in common. 162 N. C., 165. The other litigation between them concerned the title to Lot 12 of said division, which was finally decided by this Court in favor of the plaintiff, so that plaintiff has recovered Lots 1 and 4, which bound the land in controversy on the east and west; Lot 12, which bounds it on the north, the Cross Canal being its southern boundary. The jury, in this case, returned the following verdict:

1. Is the plaintiff, John L. Roper Lumber Company, the owner and entitled to the possession of the land described in the complaint, as alleged? Answer: "Yes; the whole thereof."

2. If so, have defendants entered and trespassed thereon, as alleged? Answer: "Yes."

3. If so, what damage has plaintiff sustained thereby? Answer: "$75."

The decision of this matter turns chiefly on the plaintiff's adverse possession of Lots 2 and 3. Judgment was entered upon the verdict, and defendant appealed.

*Small, MacLean, Bragaw & Rodman, and J. Kenyon Wilson for plaintiff.*

*Ward & Thompson and Winston & Biggs for defendant.*

WALKER, J., after stating the case: The defendant contends, as to both tracts, that plaintiff has had no such adverse possession as ripened his title under color, as the two tracts, designated as Lots 2 and 3 in the New Lebanon Division, were held by plaintiff and claimed by two separate deeds, and were, in fact and in law, to be taken and considered as two separate and distinct tracts of land, which would, therefore, require an adverse possession of each tract during the full period of limitation. It may be admitted, generally, that where the bar of the statute is pleaded, or the benefit thereof is relied on in any way, as to two separate pieces of land against the same claimant, an adverse holding of each must be made out for the requisite time by circumstances relating to the possession of each piece respectively, and mere possession of the one will not be extended so as constructively to include the other. A discussion of the question is not called for, as we are satisfied that there was an actual adverse possession of each tract under color for a sufficient length of time to ripen the title into a perfect one. The defendant's objection was not to the character of the possession, as not being adverse, but to the application of the doctrine of constructive possession to a case where there are two or more separate tracts of land, when it should be restricted to cases where there is only one tract involved. 1 Cyc., 1128. There was no error, therefore, as to Lot No. 2.

The other question presented, as to Lot No. 3, is whether the plaintiff waived or abandoned all right to claim any benefit from its adverse possession of six and a half years under the deed of Harrison E. Weston to it, dated 1 June, 1878, as color of title, by afterwards, 19 December, 1884, taking a deed from H. E. Weston, John R. White, and others. Defendants contend that at the time the last deed was made they were tenants in common with H. E. Weston and the other persons named therein, but it may well be doubted if they have offered evidence sufficient in law to establish the fact under the rule laid down in *Byrd v. Express Co.,* 139 N. C., 273, or whether they have connected themselves with the title of Samuel Weston, the first. As tested by the clear weight of authority

and the rule of reason, the general doctrine is that a person in adverse possession of land under color may purchase an outstanding title to the same land without thereby preventing his possession from being longer adverse or breaking its continuity; and this is so, although the period fixed by the statute for perfecting his title, under color, had not then expired. The subject is so fully and lucidly treated by *Circuit Judge William H. Taft* in *Elder v. McCaskey*, 70 Fed. Rep. (Circuit Court of Appeals), 529, especially at p. 547, that we could not do better than to reproduce what has there been said, and especially as the facts of that case are so clearly analogous to those now under consideration, the outstanding title being that of a tenant in common: "There remains to consider the contention of claimants, sustained by the court below, that, whether the possession of defendants was at any time adverse to the claimants, the disseizin was subsequently purged by recognition and acquiescence of defendants in claimants' title, so that an avowed cotenancy ensued before the statute had run. This contention is chiefly rested on the purchase and acceptance by the defendants of deeds conveying to them outstanding interests of certain of the heirs of the brothers and sisters of William Barr, Sr., whose title was of the same character as that of claimants. It is well settled by binding authority that a vendee is not estopped to deny the title of his vendor. *Robertson v. Pickrell*, 109 U. S., 608, 614, 615, 3 Sup. Ct., 407; *Watkins v. Holman*, 16 Pet., 25, 54; *Willison v. Watkins*, 3 Pet., 43; *Blight's Lessee v. Rochester*, 7 Wheat., 535. And the necessary conclusion from this is drawn, in the last named case, that the person in possession of property under a claim of complete ownership has the right to fortify his title by the purchase of any real or pretended titles, without thereby holding possession in subordination to them. This is further supported by the decisions of many other courts to the same effect. *Warren v. Bowdran*, 156 Mass., 280; *Gardner v. Greene*, 5 R. I., 104; *Chapin v. Hunt*, 40 Mich., 274, 279; *Mather v. Walsh*, 107 Mo., 121, 131; *Giles v. Pratt*, 2 Hill (S. C.), 439, 442; *Osterhout v. Shoemaker*, 3 Hill, 513, 518; *Tobey v. Secor*, 60 Wis., 310, 312. The following are cases where the possessor and defendant purchased outstanding titles of tenants in common with the plaintiffs in ejectment, and yet was held not to have thereby acknowledged the validity of the plaintiff's title; *Fox v. Widgery*, 4 Me., 214; *Jackson v. Smith*, 13 Johns., 406, 413; *Northrop v. Wright*, 7 Hill, 477, 489, 496; *Bryan v. Atwater*, 5 Day, 181; *Cannon v. Stockmon*, 36 Cal., 539; *Winterburn v. Chambers*, 91 Cal., 183; *Cook v. Clinton*, 64 Mich., 309, 313. And the same rule prevails in Ohio." We need not assent to all that is said in that case as to the relation of vendor and vendee with respect to any estoppel of the latter to deny or dispute the title of the former, and we cite the case only for the purpose of showing that the vendee's ad-

verse possession is not affected by his purchase, and not as binding us to an approval of all the reasons advanced in support of the conclusion, as that is not necessary to a decision of this matter or to the value of the case as an authority.

Mr. Freeman, in his work on Cotenancy and Partition, sec. 106, says: "A person in possession of land may protect himself from litigation by purchasing any outstanding claim against his property. By so purchasing he does not necessarily admit the superiority of the title bought, nor change his possession, which was before adverse, into a possession subordinate to the newly acquired title. Therefore, one who is in possession of real estate does not become a tenant in common thereof by merely accepting a deed therefor from the owner of an undivided interest therein."

The party who accepts a deed in fee from a grantor having no title or a less estate than he conveys performs no act expressly designed to influence, and which influences, the conduct of the latter to his injury, nor does he make any admission which in good conscience and honest dealing he should be forbidden to gainsay. The grantee is the one exposed to injury, and when necessary for his protection, he may show the truth and dispute the title of his grantor, as a party is only concluded against showing the truth or asserting a legal right when the result would be a wrong, through his means, to some third person. There is no such relation ordinarily existing between the grantee in fee and his grantor as will raise even an implied obligation, on the part of the former, against a denial of the title and estate of the latter. Although a tenant cannot question the right of his landlord, a grantee in fee, as he stands on a different footing in the law, may hold adversely to the grantor, and there can be no good reason why he should not be at liberty to deny that the grantor had any title. There is no estoppel where the occupant is not under an obligation, express or implied, that he will at some time or in some event surrender the possession, but the grantee in fee is under no such duty. He does not receive the possession under any contract, express or implied, that he will ever give it up, but takes the land to hold for himself and to dispose of at his pleasure. He owes no faith or allegiance to his grantor, and he does him no wrong when he treats him as an utter stranger to the title; and, finally, it results from these considerations, and perhaps others of equal cogency, that his possession is really adverse to his grantor, as has often been held by the courts. The above principles are supported by the following cases: *Sparrow v. Kingman,* 1 N. Y. (1 Comstock), 242; *Osterhout v. Shoemaker,* 3 Hill, 518. The disseizin, therefore, was not purged by taking the deed, nothing else appearing. A disseizor in possession has an interest in the land which he may transfer with the possession to a third person or which on his

death will pass to his heir, and the mere taking of a deed from another, against whom he is holding adversely, does not, of itself, constitute a relinquishment of this right. *City of St. Paul v. C. M. and St. P. Railway Co.,* 48 N. W. (Minn.), 17.

In *Coakley v. Perry,* 3 Ohio St., 344, one Nathan Perry had purchased the land, received a conveyance, and was in possession. Subsequently he took a deed, with covenant of warranty, from Job Doan, to whom one-fourth interest in a tax title had descended from his father, and with reference to these facts the Court said: "It would be the grossest absurdity to conclude that Nathan Perry, by taking the conveyance from Job Doan, for a trifling consideration, contemplated, instead of continuing seized of the whole premises, as he claimed to have been before, that he became seized of only an undivided part in common with the other heirs of Job Doan's ancestor. It would seem to be just and reasonable that a person in the *bona fide* possession of land under a claim of title should be allowed to buy in any title, real or pretended, with a view to quiet the enjoyment of his possessions, and that the purchase of an adversary title, if it does not strengthen, should certainly not have the effect to impair, the title of the owner. It is not the policy of the law to deter persons from buying their peace and compel them to submit to the expense and vexation of lawsuits, for fear of having their titles tainted by defects which they would gladly remedy by purchase, where it can be done with safety." *Judge Taft* further says in *Elder v. McClasky, supra,* at p. 548: "Whether the acceptance of a deed of an outstanding interest by one in possession shall affect his adverse possession depends on all the circumstances surrounding it. Generally, if his possession began under a claim of title in fee, the purchase of another title is not to be regarded as a change in his attitude. His purchase may strengthen his title, but it is usually not permitted to impair it. Cases may perhaps be conceived where the acceptance of a deed for an interest in property by one in possession would be equivalent to an express avowal of subordination to the title of others in privity with the grantors, but it would be exceptional. The cases relied upon by the court below to establish a different doctrine do not seem to us to do so." He then proceeds to distinguish the cases which it was contended held to the contrary, and demonstrates that they were based upon exceptional circumstances which showed that the grantee in the deed intended to abandon his prior possession and to claim under his newly acquired title, which, of course, would take them out of the rule. It is said in 1 Cyc., p. 1016: "With the exception of at least one decision in which it has been broadly ruled that the purchase of an outstanding title or interest by the adverse claimant interrupts the continuity of his possession, it seems to be very generally conceded that an adverse occupant may purchase an outstand-

ing title without thereby interrupting the continuity of his possession. A party, it is said, may very well deny the validity of an adverse claim of title, and yet choose to buy his peace at a smaller price than be at great expense and annoyance in litigating it." It may be admitted that, under some special circumstances, the purchase of an outstanding interest will have the effect of divesting the possession of its hostile character, but no such circumstances are to be found in this case. A party is not bound to admit, and does not necessarily admit, title in another because he prefers to get rid of that other's claim by purchasing it. He has a right to quiet his possession and protect himself from litigation in any lawful mode that appears to him most advantageous or desirable. To hold otherwise would compel him to litigate adverse claims, or, by buying one, forego any right to claim the benefit of the statute of limitations as to all others. The acts and declarations of the possessor may, doubtless, be given in evidence with a view of showing the character of his claim, but whether the possession is adverse or not is a question for the jury to determine upon all the evidence. *Cannon v. Stockmon,* 36 Cal., 539. If a party is in possession continuously for seven years, all the time claiming ownership exclusive of any other right, and under color, he is entitled to the benefit of the statute of limitations, no matter how many outstanding adverse claims he may purchase to secure his peace and remove any cloud or suspicion from his title, unless he has in some way estopped or precluded himself from relying on that statute, and the question for the jury to determine on such claim is, whether upon all the evidence he appears to have been continuously in possession during the time prescribed, claiming title adversely and exclusive of any other right. *Cannon v. Stockmon, supra.* This is not the case of a grantee of one tenant in common who is in possession under a deed for the whole and not for the particular tenant's interest, which requires a holding for twenty years to bar the cotenant, the making of the deed and the possession by the grantee claiming thereunder not being sufficient, under our ruling, to constitute such a disseizin of the cotenant as to bar his right if the possession is continued for seven years. *Page v. Branch,* 97 N. C., 97; *Breeden v. McLaurin,* 98 N. C., 307; *Ferguson v. Wright,* 113 N. C., 537; *Roscoe v. Roper Lumber Co.,* 124 N. C., 42; *Bullin v. Hancock,* 138 N. C., 198; *Whitaker v. Jenkins, ibid.,* 476; *Dobbins v. Dobbins,* 141 N. C., 210. And these cases show, as also does *Caldwell v. Neely,* 81 N. C., 114, that twenty years of possession is essential to bar cotenants, and the fact of holding and claiming under a deed for the whole from one of them will make no difference. *Boggan v. Somers,* 152 N. C., 390. And the same doctrine was stated very recently in a case between the same parties as those arrayed against each other in this record (*Lumber Co. v. Cedar Works,* 165 N. C., 83), where we said: "We are

aware that this Court has held that a deed by one tenant of the entire estate held in common is not sufficient to sever the unity of possession by which they are bound together, and does not constitute color of title, as the grantee of one tenant takes only his share and 'steps into his shoes.' In such case, twenty years of adverse possession, under a claim of sole ownership, is required to bar the entry of the other tenants, under the presumption of an ouster from the beginning raised thereby. *Cloud v. Webb,* 14 N. C., 317; *Hicks v. Bullock,* 96 N. C., 164; *Breeden v. McLaurin,* 98 N. C., 307; *Bullin v. Hancock,* 138 N. C., 198, and *Dobbins v. Dobbins,* 141 N. C., 210, where the other cases are collected. We are not inadvertent to the fact that this State stands alone in the recognition of this principle, the others holding the contrary, that such a deed is good color of title (1 Cyc., 1078, and notes); but it has too long been the settled doctrine of this Court to be disturbed at this late day, as it might seriously impair vested rights to do so. It should not, though, be carried beyond the necessities of the particular class of cases to which it has been applied, but confined strictly within its proper limits; otherwise, we may destroy titles by a too close attention to technical considerations growing out of this particular relation of tenants in common, and more so, we think, than is required to preserve their rights. This view has, within recent years, been thoroughly sanctioned by the Court." *Judge Gaston* said, in *Cloud v. Webb,* 15 N. C., 290 (second appeal): "A sole possession by the bargainee of a part under a deed in severalty for that part might and probably would amount to a demonstration plain that such possession was a several holding under that deed, was tantamount to an ouster of that part, and therefore adverse to Mrs. Cloud's claim of a right to the possession thereof." It will be seen by these references within what narrow limits the doctrine as to the effect of a possession held under the deed of one of the cotenants is confined, and as to whether such a deed, followed by possession taken by the grantee, will constitute a disseizin of the other tenants. But here the plaintiff held under a deed made by a stranger, and adversely to all others, for six and one-half years, and we find no evidence that he intended to relinquish the advantage he had gained by such holding and substitute for it a one-half undivided interest in the land of doubtful validity, but the contrary appears to have been the motive and purpose, as the subsequent purchase was clearly intended merely to clear up the title, or to get rid of adverse claims to it, however unfounded they may have been, so that it would be exempt from future attack. It was not supposed by any of the parties to the transaction that plaintiff was buying an interest in common with defendants, but all the circumstances tend to show that it continued to rely upon the adverse possession to ripen its title under the color. The case is, therefore, not like that of

one when an outsider receives a deed from one of the tenants for the entire and undivided estate in the land held in common, and has no other source of title. Plaintiff holds the deed of a stranger to a several interest, and not one held in common, and has the right to perfect his title under it, although he may have purchased another claim and taken a conveyance from those asserting it, to safeguard the title, which was maturing by his continued possession under color.

The prayers of the defendants required the court to instruct the jury, as matter of law, that the taking of the second deed prevented plaintiff from claiming any benefit by its adverse possession under the Harrison E. Weston deed of 1878, and there was no error in refusing them. The court properly left the question of adverse possession to the jury, with appropriate instructions. The reference to plaintiff's possession in 1871 and 1872 was harmless, being merely the statement of a contention. The court immediately afterwards correctly instructed the jury as to adverse possession under color, and the jury could not have been misled. The issues were sufficient to present all controverted matters and were properly submitted by the court, instead of those tendered by the defendant. *Albert v. Ins. Co.,* 122 N. C., 92; *Ratcliff v. Ratcliff,* 131 N. C., 425; *Hatcher v. Dabbs,* 133 N. C., 239; *Zollicoffer v. Zollicoffer, ante,* 326. The other exceptions are without any merit.

After a careful review of the record and a studious consideration of the arguments of counsel, we have not been able to find any error committed by the court at the trial.

No error.