EVA HART BREWER, WIDOW; CATHERINE B. SNEAD AND HER HUSBAND, HASSELL LEE SNEAD; CHARLES HART BREWER AND HIS WIFE, LUCY KIMBALL BREWER; STEPHEN W. BREWER AND HIS WIFE, ELIZABETH ROSE BREWER; WILLIAM F. BREWER AND HIS WIFE, PAULINE NEISLER BREWER, AND ROBERT P. BREWER AND HIS WIFE, PERCYE B. BREWER, v. MYRTLE S. BREWER, WIDOW; GEORGIE S. TILLEY AND HER HUSBAND, BERT W. TILLEY; MARY ANN REGAN AND HER HUSBAND, JOHN B. REGAN.

(Filed 25 November, 1953.)

**1. Adverse Possession § 4a—**

While ordinarily the possession of one tenant in common is in law the possession of all and is not adverse to the others, where one tenant in common has been in sole possession of the land for more than twenty years and has taken exclusive rents and profits from the land openly and notoriously under claim of sole ownership, an ouster may be presumed, and title may ripen in such tenant by adverse possession.

**2. Adverse Possession § 18—**

An admission that the tenant in common in possession made improvements upon the property under *bona fide* claim of title, even though the admission is made solely for the purpose of settling the question of betterments in the event he establishes title by adverse possession, is competent to be considered on the question of the character of his possession.

**3. Adverse Possession § 3—**

The requirement that possession be "hostile" in order to ripen title by adverse possession does not import ill will or animosity, but only that the possessor claim exclusive right to the property.

**4. Adverse Possession § 19—**

Evidence tending to show that a tenant in common obtained deed from all of his cotenants except one, and possessed the land openly, notoriously, and exclusively under claim of right for over twenty years, taking the rents and profits, paying the taxes and making improvements under claim of title, *is held* sufficient to be submitted to the jury on the question of his acquisition of the entire title by adverse possession under the theory of presumptive ouster.

**5. Adverse Possession § 18—**

Evidence that a tax foreclosure was instituted solely against the tenant in common in possession of the lands who had no record paper title at the time is competent upon his claim of title by adverse possession, since even though general reputation is incompetent to prove paper title it is competent to show notoriety of possession.

**6. Trial § 17—**

The general admission of evidence competent for a restricted purpose will not be held for error unless appellant, at the time of its admission, asks that its purpose be restricted.

**7. Appeal and Error § 39f—**

An inadvertence in stating that certain evidence had been introduced by respondents, when in fact the evidence had been introduced by petitioners, will not be held for reversible error when upon the whole record it is apparent that petitioners could not have been prejudiced thereby.

**8. Appeal and Error § 6c (6)—**

An inadvertence in the charge in stating the evidence should be called to the trial court's attention in time to afford opportunity for correction.

**9. Adverse Possession § 18: Compromise and Settlement § 2—**

An offer by claimant to purchase a quitclaim deed from the adverse party after title had ripened in claimant by adverse possession is not an acknowledgment of title in such adverse party, nor does it break claimant's continuity of possession or affect the validity of claimant's perfected title.

APPEAL by petitioners from *Williams, J.,* August Term, 1953, of CHATHAM.

This is a special proceedings instituted before the Clerk of the Superior Court of Chatham County for the sale of real estate for partition, and transferred to the Superior Court for trial upon the respondents' filing an answer in which they pleaded sole seizin of the real estate in question.

The evidence and facts pertinent to this appeal are as follows:

1. Stephen W. Brewer died intestate prior to the year 1919, seized and possessed of the land described in the petition, being twenty-two acres, more or less. He left surviving his widow and five children as his only heirs at law.

2. The petitioners are the widow and heirs at law of Charles S. Brewer, one of the five children of Stephen W. Brewer, and they claim a one-fifth undivided interest by inheritance from Charles S. Brewer. The respondents are the widow and heirs at law of George W. Brewer, one of the five children of Stephen W. Brewer, and they claim the whole property by inheritance from the said George W. Brewer.

3. Subsequent to the death of Stephen W. Brewer, and in the year 1919 or 1920, George W. Brewer moved upon the premises in question with his family and his mother, Mary C. Brewer, and lived thereon continuously from that time until his death on 8 December, 1950. In the meantime his mother lived in his home until her death on 29 December, 1922. By conveyance dated 29 December, 1921, Mary C. Brewer, widow of Stephen W. Brewer, two of the children of Stephen W. Brewer and the children of a deceased child, conveyed to George W. Brewer all their right, title and interest in the subject property.

4. Charles S. Brewer, the ancestor of the petitioners, died in February, 1921, subsequent to the date that his brother, George W. Brewer, moved upon and occupied the premises in question. The respondents allege that their ancestor, George W. Brewer, acquired title to the one-fifth undivided interest of Charles S. Brewer by adverse possession.

5. According to the evidence, George W. Brewer made substantial and extensive repairs and additions to the home as well as other improvements on the premises from time to time at a cost to him in excess of $9,000.00, and it is stipulated that the improvements made upon the property in controversy were made under a *bona fide* claim of title by the respondents. It is further stipulated that beginning in 1922 and each year thereafter until his death, George W. Brewer paid all the county taxes levied on the property and since his death the property has been listed in the name of the estate of George W. Brewer and the taxes levied thereon have been paid by the estate. The evidence further tends to show that in addition to the improvements made to the "Brewer homeplace" located on the premises, and several other buildings erected thereon, George W. Brewer built a new road from the homeplace to the highway, laid culverts under the road, fenced some of the land and cleared it and used it for pasture, cut and used firewood therefrom, and cultivated the cleared portions thereof; that the petitioners never made any demand on George W. Brewer for an accounting of the rents and profits therefrom, or asserted any claim to the property or any part thereof, and that George W. Brewer never made

20—238

any accounting or paid any rents or profits to the petitioners or their ancestor, Charles S. Brewer.

6. The deed described in paragraph three above was not discovered by respondents until after the death of George W. Brewer and was filed for registration on 13 December, 1950.

7. The petitioners offered in evidence the deed conveying the premises in question to Stephen W. Brewer, dated 1 April, 1887, and the deed from Mary C. Brewer and others dated 29 December, 1921, for the purpose of showing that the respondents owned only a four-fifths undivided interest in the property. The only additional evidence offered on behalf of the petitioners was the testimony of Charles H. Brewer, one of the petitioners, to the effect that John B. Regan (one of the respondents), who is an attorney at law and a son-in-law of George W. Brewer, after discovering a defect in the paper title to the premises, offered to pay $1,000.00 for a quitclaim deed from him and the other petitioners.

8. Mr. Regan testified in rebuttal to the testimony of Charles H. Brewer to the effect that when he discovered that Charles S. Brewer and his wife Eva Brewer had not signed the deed to George W. Brewer, he went to see the petitioner Charles H. Brewer; that he went on his own initiative and was not authorized to do so by anyone; that he informed Charles H. Brewer that in his opinion the petitioners had no interest in the property, but in order to get a merchantable title he would prefer to pay for a quitclaim deed rather than institute an action in the Superior Court.

The jury returned a verdict to the effect that the respondents are the sole owners of the lands, as alleged in the answer, and judgment was entered accordingly. The petitioners appeal, assigning error.

*Bell & Horton for petitioners, appellants.*
*Ike F. Andrews and Barber & Thompson for respondents, appellees.*

DENNY, J. The petitioners in the trial below moved for judgment as of nonsuit on the plea of sole seizin on the ground that the evidence offered by the respondents was insufficient to show ouster. The motion was overruled and the petitioners excepted thereto and base their seventh assignment of error thereon. They cite, in support of their motion, the case of *Cox v. Wright,* 218 N.C. 342, 11 S.E. 2d 158. This case quotes with approval the language of *Pearson, C. J.,* in *Day v. Howard,* 73 N.C. 1, as follows: "There is a fellowship between tenants in common. The law assumes they will be true to each other; the possession of one is the possession of all, and one is supposed to protect the rights of his cotenants and is not tolerated in taking an adversary position unless he acts in such manner

as to expose himself to an action by his fellows on the ground of a breach of fealty; that is, by an actual ouster."

In this connection, however, it is well to note that in *Woodlief v. Woodlief,* 136 N.C. 133, 48 S.E. 583, *Connor, J.,* in quoting the above language from *Day v. Howard, supra,* pointed out that in *Covington v. Stewart,* 77 N.C. 148, it was held that the "possession of one tenant in common is the possession in law of all, but if one have the sole possession for twenty years without any acknowledgment on his part of title in his cotenant, and without any demand or claim on the part of such cotenant to rents, profits, or possession, he being under no disability during the time, the law in such cases raises a presumption that such sole possession is rightful, and will protect it."

Furthermore, in the case of *Winstead v. Woolard,* 223 N.C. 814, 28 S.E. 2d 507, *Justice Winborne,* in speaking for the Court, said: "It is a well settled and long established principle of law in this State that the possession of one tenant in common is in law the possession of all his cotenants unless and until there has been an actual ouster or a sole adverse possession of twenty years, receiving the rents and profits and claiming the land as his own from which actual ouster would be presumed." *Duckett v. Harrison,* 235 N.C. 145, 69 S.E. 2d 176; *Whitehurst v. Hinton,* 230 N.C. 16, 51 S.E. 2d 899; *Hardy v. Mayo,* 224 N.C. 558, 31 S.E. 2d 748; *Parham v. Henley,* 224 N.C. 405, 30 S.E. 2d 372.

In the case before us it is conceded and stipulated that the improvements made upon the premises in controversy were made under a *bona fide* claim of title by the respondents. The petitioners claim, however, that this stipulation was entered into for the sole purpose of settling the question of betterments in the event the petitioners prevailed. Conceding this to be so, it was likewise an admission that the possession of the premises in question by George W. Brewer was also under a *bona fide* claim of title, otherwise he could not have erected buildings on the premises in good faith, under claim of title.

The petitioners take the further position that since the relationship between them and the respondents has always been friendly and cordial, possession of the respondents has not been hostile. It is true the definition of the word "hostile" is given by the lexicographers as "showing ill will or animosity, or as being unfriendly or antagonistic," but this does not correctly state the character of the occupancy necessary to create adverse possession. The character of the possession must be hostile in order for it to be adverse. However, this does not mean that ill will or animosity must exist between the respective claimants. It only means that the one in possession of the land claims the exclusive right thereto. 1 Am. Jur., Adverse Possession, section 138, page 872.

The evidence offered by the respondents was ample to take the case to the jury on the plea of sole seizin and the exception to the failure of the trial judge to sustain petitioners' motion for judgment as of nonsuit on this plea is overruled.

In the course of the trial below the respondents offered in evidence the pleadings in a tax foreclosure suit instituted in December, 1941, by the Town of Pittsboro against George W. Brewer and wife. In paragraph two of the Town's complaint it was alleged that "the defendants are the owners, subject to the tax liens hereinafter referred to, of the following described lands lying and being in the said Town of Pittsboro . . ." The complaint then purported to describe the lands now in controversy and concluded with these words, "being the homeplace of the said George W. Brewer . . ." The defendants in their answer denied the allegations in paragraph two of the complaint, except as admitted. They then alleged that the lands in question did not lie within the incorporated area of the Town of Pittsboro; that such fact had been established by a survey authorized by the Town in 1927 and paid for by the defendants, at which time it was agreed by the officials of the Town of Pittsboro that the described lands lie outside of the Town's corporate limits.

The petitioners excepted to and assign as error the admission in evidence of the above pleadings on the ground that it was an attempt by the respondents to prove title by reputation, citing Stansbury N. C. Evidence, section 148; *Locklear v. Paul,* 163 N.C. 338, 79 S.E. 617; *Sullivan v. Blount,* 165 N.C. 7, 80 S.E. 892.

It is true that reputation is not admissible to prove ownership of lands, but on the question of adverse possession the rule seems to be that a general reputation that land is owned by one who is in possession thereof is admissible to show the notoriety of such possession. 20 Am. Jur., Evidence, section 464, page 408, *et seq.;* 2 C.J.S., Adverse Possession, section 223, page 833, *et seq.; Maxwell Land Grant Co. v. Dawson,* 151 U.S. 586, 38 L. Ed. 279. In the last cited case the United States Supreme Court in passing upon a similar question said: "There was no error in admitting testimony to the effect that the land claimed by Dawson was generally reputed to belong to him. Claiming as he did by open, notorious and adverse possession of these lands for a period sufficient under the statutes of New Mexico to give him a good title, it was competent to prove that it was generally understood in the neighborhood, not only that he pastured his cattle upon these lands, but that he did so under a claim of ownership, and that his claim and the character of his possession were such that he was generally reputed to be the owner. While this testimony would be irrelevant in support of a paper title, it had an important bearing upon the notoriety of his possession." See *Everett v. Sanderson, ante,* 564.

The evidence disclosed on this record clearly establishes the fact that George W. Brewer entered upon the premises in question in the year 1919 or 1920 and continued to reside thereon until his death on 8 December, 1950. There is certainly no evidence that his occupancy was a permissive one, or that the petitioners, or their ancestor, prior to the death of George W. Brewer, ever asserted any claim of title to the one-fifth undivided interest in the premises they now undertake to assert. Therefore, the character and notoriety of the possession of George W. Brewer was an important factor in determining whether or not his occupancy of the premises in controversy for more than thirty years was or was not adverse to the petitioners. Consequently, since the allegations in the above pleadings with respect to ownership were clearly based on reputation, the defendants in that action having no paper title of record at that time to any part of the premises involved, we hold that the pleadings were admissible to show the notoriety of George W. Brewer's possession. Moreover, when evidence that is competent for some purposes, but not for all, is admitted generally, an exception thereto will not be sustained unless the appellant asks, at the time of its admission, that its purpose be restricted. Rule 21 Rules of Practice in the Supreme Court, 221 N.C., page 558; *S. v. Hendricks,* 207 N.C. 873, 178 S.E. 557.

The petitioners' eighth exception is to an inadvertence of his Honor in stating to the jury that the respondents offered in evidence the deed conveying the property in question to S. W. Brewer from Mr. Foushee, dated in 1887, and deed from Mary C. Brewer, Annie B. Thompson and others, heirs of S. W. Brewer, to George W. Brewer, when as a matter of fact these deeds were offered in evidence by the petitioners.

We cannot conceive how this inadvertence or misstatement could have prejudiced the rights of the petitioners. It was made clear in the pleadings and in the trial below that the respondents had no paper title to the one-fifth undivided interest involved in this action, and the jury was instructed that in order to show title thereto the burden was on the respondents to establish by the greater weight of the evidence "that the respondents have been in the open, notorious, sole, adverse, continuous peaceful possession of this property for a period of twenty years, exercising the right of dominion and ownership over it, making such use of the property and land in question as its condition made it suitable for." Moreover, this inadvertence or misstatement on the part of his Honor was one that should have been called to his attention at the time it was made, and thus afforded him an opportunity to correct it before the case was submitted to the jury. *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608, and cited cases. This exception is without merit.

In connection with the petitioners' thirteenth exception, which is to the charge, it is contended that his Honor should have charged the jury

with respect to the offer made by the respondent, John B. Regan, for a quitclaim deed to be executed by the petitioners. The petitioners contend that by making this offer the respondents specifically recognized that title to the one-fifth undivided interest in controversy was in the petitioners, and that his Honor should have charged the jury that they must find that the respondents did not acknowledge the title of the petitioners before they could answer the issue in favor of the respondents. We do not concur in this view. The evidence with respect to Regan's offer was insufficient to bind the respondents who are the real claimants, but for the sake of argument, if it be so conceded, it would have no effect on the validity of a title theretofore perfected by adverse possession; neither would it break the continuity of such possession. In 1 Am. Jur., Adverse Possession, section 184, page 893, *et seq.,* it is said: "The continuity of the possession of an adverse claimant is not interrupted by his act in purchasing or bargaining for an outstanding title. Indeed, the person may very well deny the validity of an adverse claim or title, and yet choose to buy his peace at a small price, rather than be at great expense and annoyance in litigating it," citing *Alsworth v. Richmond Cedar Works,* 172 N.C. 17, 89 S.E. 1008; *John L. Roper Lumber Co. v. Richmond Cedar Works,* 168 N.C. 344, 84 S.E. 523, Ann. Cas. 1917B, 992.

We have carefully considered the remaining exceptions and assignments of error and, in our opinion, they present no prejudicial error that would warrant a new trial.

No error.