Burttn, J.
 

 The effort in the defense was to show that the possession of Holmes was not adverse to his daughter at the time of her first marriage, so as thereby to place the title in her husband, Airey, against whom the statute of limitations would operate and give the title to the defendant under the subsequent gifts from Holmes, and on that ground, the case was decided at the trial against the plaintiff. That the possession of Holmes was
 
 prima facie
 
 adverse, cannot be disputed. If the title had been in him, in fact, for any period, however limited, a possession under it would be necessarily adverse, that is, on a claim of the property as his own, and held for his own use. But the rule is not restricted to that case; for a wrong-doer may also have an adverse possession, and every conversion imports that the party was claiming a right and acting upon it, and every possession is presumed to be for the benefit of the possessor, and on his right, until the contrary be shown. If, indeed, one comes into possession as bailee, taking the thing as the property of another, and holding for the other, that presumption is rebutted. But it is necessary that one alleging such bailment, should establish it by satisfactory proof; otherwise the natural and legal presumption must stand. In this case, it was held that the execution of the deed of gift,, with the acknowledgement of it, together with the father’s subsequent declarations, that his daughter “should have the slaves,” or “ would get” them, or “ will get” them, notwithstanding simultaneous declarations by him, that “ the negroes were his,” and notwithstanding that on speaking of them, “he always called them his negioes,” as deposed to by the same witnesses, were evidence of a bailment; and that such bailment was not determined by his declarations, that the negroes were his for his life or absolutely.
 

 
 *499
 
 The first observation the case suggests is, that there is here no express bailment — none created by contract between the parties, made with that view. It was supposed on the trial, that a bailment might be implied from the circumstances mentioned by his Honor. For the furtherance of justice, and for the sake of the remedy, there are cases in which an infant may be allowed to treat a person entering upon his estate as a guardian or bailiff, and to call him to an account in that character. But that is plainly for the benefit of the infant, and to give him the largest redress against the tort-feasor, and it can never be turned against the infant to defeat any other action he might have; much less his right. For doubtless, the infant might, in such cases, have likewise ejectment and an action for mesne profits, or trover, if it would better suit his purpose. It is but the common principle that torts may be waived and actions
 
 ex contractu
 
 brought in many cases; a fiction, that, like others in the law, must never be allowed to work wrong. Therefore, one who has sold another’s horse, and might be sued for money had and received, cannot object, for that reason, to the owner’s bringing trover, in which, peradventure the recovery may be larger, because the horse might be worth more than the price got. Admitting, then, the plaintiff might have treated her father as holding under and for her, (though it is not clearly seen how she could,) yet, that does not authorise the father to say now, that he held in no other way, there being no bailment directly proved. The Court is not able, indeed, to see how the facts enumerated afford any evidence, that there was even an implied bailment. If there had been an express one, it is admitted that mere declarations of the bailee would not determine it. But here, the question was whether, in fact, there was a bailment.
 

 Upon that enquiry, all the declarations of the person in possession, as well as his dealings with the property, are rele-want and material evidence of the character of his holding, and one cannot help seeing that Holmes did, at all times, claim the right of property of some kind in the slaves, under which he held. From the framing of the deed it is probable
 
 *500
 
 that, atone time, he considered that gave or reserved' them to him for life. At another time, he may have supposed himself entitled to the absolute property, because the deed had not been delivered, and that is the more probable, seeing that he undertook to dispose of them amongst his other children. But throughout, he certainly claimed them as his, and asserted a right to them ; and even the very declarations relied on l>3r the defendant, imported that they were not then his daughter’s, but that-she should-have them, dr would get. them, that is, he intended she should-; for, at the same time he asserted that they were his own. ¡If he thus claimed them, his..posse.ssion was
 
 prima facie
 
 adverse, and was conclusively so, unless upon plain proof of a bailment,- or-by his direct admission — pf neither of which is there any evidence. As the case stands, the plaintiff’s title is clear, and she ought to.have had a verdict.
 

 Pee Cueiam. Judgment reversed,, and
 
 venire de novo.