## RICHMOND CEDAR WORKS v. FOREMAN BLADES LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit.   July 10, 1920.)

### No. 1775.

1. **Evidence** ☞121(6)—**Declarations by possessor, claiming title, are competent as res gestæ.**

   Declarations made by one in possession of land that he held it as his own are admissible to show adverse possession, as explanatory of the possession and part of the res gestæ.

2. **Evidence** ☞273(4)—**Declarations of possessor, claiming to hold under another, are competent.**

   Declarations by a person in possession of land that he held it for another, who claimed ownership, are competent to establish adverse possession, whether the possessor was a tenant of the claimant, or was a slave belonging to the claimant, who could not claim possession in his own right.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Evidence ⬤═266—Witnesses ⬤═38—Testimony and declarations made by slaves admissible.**

Since the removal of the disability of slavery, the testimony of former slaves as to transactions occurring during their slavery, and testimony as to acts and declarations by slaves, are as competent as though the state of slavery had never existed.

**4. Adverse possession ⬤═27—Evidence held to show possession by slaves.**

In an action of trespass, where defendant claimed by adverse possession under color of title, evidence *held* sufficient to sustain the jury's finding that slaves were in possession under defendant's predecessor in title, and that the cabin in which they lived was located on the disputed tract.

**5. Appeal and error ⬤═1053 (1)—Admission of irrelevant documents subsequently excluded is harmless.**

Error in the admission in evidence of documents, which it subsequently appeared were entirely irrelevant, and which were then excluded from the consideration of the jury, was harmless.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Henry G. Connor, Judge.

Action by the Richmond Cedar Works against the Foreman Blades Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. S. Manning, of Raleigh, N. C., and J. Kenyon Wilson, of Elizabeth City, N. C., for plaintiff in error.

A. D. MacLean, of Washington, N. C. (J. B. Leigh and Aydlett & Sawyer, all of Elizabeth City, N. C., and Small, MacLean, Bragaw & Rodman, of Washington, N. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. In its complaint Richmond Cedar Works alleges ownership of $^{22}/_{24}$ interest in a tract of land in the county of Pasquotank, N. C., containing 2,081.9 acres and trespass by defendant Foreman Blades Lumber Company by cutting timber thereon of the value of $120,000. The defendant disclaimed title to all of the land described in the complaint, not included in a conveyance to it from C. L. Hinton and others dated April 1, 1912. It admitted cutting timber from the land embraced in that deed, but denied plaintiff's title thereto. The jury's affirmative answer to the following issue decided all the issues in favor of the defendant:

"Has the defendant, Foreman Blades Lumber Company, or those under whom said company claims, been in the possession of the land described in the complaint, known as the 'Proctor Tract,' under known and visible lines and boundaries, under color of title, for seven years prior to the 9th day of July, 1915."

The plaintiff made out a complete chain of title beginning with a grant from the state of North Carolina to John Hamilton, dated December 27, 1792; but there was no proof that it or any of its predecessors in title had been in possession of the land, and there was affirmative proof that none of them had for many years paid any taxes there-

on. The last distinct reference until 1911 to the tract of land in dispute occurring in the plaintiff's chain of title was in a deed from Francis Johnson to Alexander W. Johnson, dated February 25, 1806. After that time the chain of title depended on inheritances and wills, in which no specific reference was made to this land. In all the intervening period of more than 100 years the record discloses no assertion of title under the John Hamilton grant.

The defendant relies entirely on adverse possession under color of title. This color of title commences with a tax deed dated September 8, 1812, held by the court to be invalid as a conveyance, but available as color of title. Among the successive deeds constituting color of title, one was made in 1831 by Elizabeth Proctor to her son, Fred S. Proctor, and one in 1856 by Fred S. Proctor to James W. Hinton and. W. W. Griffin. In 1857 Griffin executed a deed to W. R. Abbott for his half interest, and in 1860 R. F. Overman, assignee in bankruptcy of Abbott, conveyed to James W. Hinton Abbott's interest in the property.

[1] The first question is whether there was competent evidence of adverse possession in defendant's predecessors in title between 1831 and 1860, and the effect of that evidence. There is no dispute that during this period the land was known as "the Proctor land." No other Proctors appear in the record, except those from whom the defendant derived color of title. These were Elizabeth B. Proctor, Samuel Proctor, her husband, and Fred S. Proctor, her son. Very old negroes in the neighborhood testified that they had always known the land as the Proctor land; that a negro, Bill Mathias, who belonged to some of the Proctors, lived on the land for a much longer period than 7 years, and died there in 1857; that his wife, who was a free woman, continued to live there until she died in 1866. David Hinton, one of these witnesses, testified that Bill Mathias told him that he belonged to Mr. Fred Proctor, and that he had put him on the land. John Gallop testified that Bill Mathias told him that he was in possession under Fred S. Proctor, who put him on the land. These last statements, attributed to Bill Mathias, are the only portions of the evidence recited which are attacked as incompetent. These declarations of Mathias were in effect a claim to hold under Fred S. Proctor adversely to the plaintiff's predecessors in title. Surely if Proctor had been on the land himself, and had asserted that he held it as his own, there would have been no question as to the admissibility of the testimony. Such statements are acts explanatory of the possession and are part of the res gestæ. Yates v. Yates, 76 N. C. 142, 147, 148; Bunch v. Bridgers, 101 N. C. 58, 7 S. E. 584; 16 Cyc. 1170; 2 C. J. 273.

[2, 3] The authorities make the rule equally clear that one who is holding under another may assert the source of his possession as a claim against the true title in favor of the person under whom he holds. It is true that Mathias was a slave, and could not assert title in himself, nor could his possession inure to his own benefit. So, also, a tenant cannot assert title in himself, nor can his possession inure to his own benefit; but the slave holds for his master, the tenant for his landlord, and there is no reason for receiving the declaration of a tenant, asserting his possession. to be under his landlord, which does not apply

with equal force to a slave asserting his possession for his master. Since the removal of the disability of slavery, the competency of testimony of former slaves as to transactions taking place while they were in a state of slavery has never been questioned. Testimony as to acts done and statements made by former slaves while in a state of slavery, if otherwise competent, stands on the same footing. Mathias' assertion of his holding under his master was an act, and not testimony taken at the time.

[4] But, even if these statements of Bill Mathias be excluded, the jury could not have escaped the inference that he held the land for Fred S. Proctor; for the evidence was that the Proctors, who claimed the land, were Elizabeth and her son, Fred S. Elizabeth conveyed to Fred S. in 1831, and after that date could not have been claiming the land. This leaves no Proctor for whom Mathias could have been holding as a slave, except Fred S. Thus it appears that the uncontradicted evidence shows that no other reasonable conclusion could have been reached, except that Mathias held for Fred S. Proctor. There was no testimony whatever tending to rebut that of these old negroes, except as to location, and we can find no reason in the record for discarding it. It seems to us, therefore, the jury were bound to find that Bill Mathias was the slave of Fred S. Proctor, that the possession of Bill Mathias of the land he was on was adverse to the true title, that it continued for more than 7 years, and that it inured to the benefit of Fred S. Proctor, under whom the defendant claims.

The testimony as to the location of the house of Mathias on the Proctor land seems to us conclusive. It was furnished by the old negroes and J. H. Hinton, who were familiar with its location, and confirmed by the surveyor, Dudley, who saw the evidence of clearing and cultivation on the land in dispute. Against this there is no testimony whatever, except that of D. O. Newberry, an agent of the plaintiff, who looked after its litigation, to the effect that he went on the Proctor land with Elijah Edge, one of the old negro witnesses, that he saw the lines of the Proctor tract, and that the place where old Mathias and his wife lived, as indicated to him by Edge, was off the Proctor land. Thus it is apparent that the location of the Mathias house on the land in dispute was proved by such an overwhelming preponderance of the evidence that it would have been the duty of the trial judge to set aside a verdict based on an opposite conclusion.

As the evidence recited required a verdict for the defendant on the issue presented to the jury, we do not think discussion of the numerous and somewhat refined assignments of error would be of value. There was evidence, also, of adverse possession under color of title by continuous cutting of timber for 7 or 8 years under color of title by those under whom defendant claims. This evidence was properly submitted to the jury.

[5] The District Judge, in the course of the trial, admitted some documents over the objections of the plaintiff's counsel. Since these documents turned out to be entirely irrelevant, and were excluded from the consideration of the jury, the error of the admission was harmless. Careful examination of the record is convincing that the

case was tried with the utmost fairness and submitted to the jury by a charge which was exceedingly liberal to the plaintiff.

Affirmed.