## ÆTNA INS. CO. OF HARTFORD, CONN., v. LICKING VALLEY MILLING CO.

Circuit Court of Appeals, Sixth Circuit.
May 13, 1927.

No. 4750.

**1. Exceptions, bill of ⟨key⟩60(1)—Failure to observe rule requiring filing assignment of errors before settling bill of exceptions held not to invalidate bill settled without objection (Circuit Court rule 10).**

Failure to observe Circuit Court rule 10, requiring filing assignment of errors at or before settling bill of exceptions, will not invalidate bill of exceptions, where bill was settled without objection on that score, and was included by stipulation of counsel in list of papers which should constitute entire record on writ of error.

**2. Trial ⟨key⟩177—Court was empowered to pass on facts, where each party at conclusion of trial by jury asked for directed verdict.**

Where, at conclusion of trial by jury, each party without reservation asked court for direction of verdict in its favor on all of the issues, court was empowered to pass on facts.

**3. Appeal and error ⟨key⟩997(3)—Appellate court must accept fact conclusions of trial court, after motion by both parties for directed verdict, supported by substantial testimony.**

Circuit Court of Appeals is bound to accept the fact conclusions of trial court, after motion for directed verdict by both parties, so far as supported by any substantial testimony.

**4. Insurance ⟨key⟩665(2)—Evidence held to support conclusion that there was previous valid oral contract pursuant to which policy was issued.**

Evidence held to support conclusion of trial judge, in action on alleged policy of fire insurance, that there was a previous valid oral contract of insurance pursuant to which policy was issued.

**5. Appeal and error ⟨key⟩1012(2)—Weight of testimony is not for consideration by appellate court, where conclusions of trial judge are supported by evidence.**

Where there is substantial evidence to support conclusions of trial judge, the weight of testimony given at trial is not for consideration by Circuit Court of Appeals.

**6. Appeal and error ⟨key⟩499(1)—Error cannot be predicated on overruling objection, ground of which does not appear in record.**

No error can be predicated on overruling of objection, where ground of objection does not appear in record.

**7. Evidence ⟨key⟩121(2)—Agent's statement to plaintiff, after telephoning insurer's agent that insurance was in effect, held admissible as res gestæ.**

In action on alleged policy of fire insurance, statement of agent, after telephoning agent for insurer relative to securing policy, that insurance was in effect, held admissible as part of res gestæ.

**8. Insurance ⟨key⟩131(1)—Oral insurance contract held not void for lack of express agreement as to company, duration of risk, amount of premium, and credit therefor.**

Oral contract of insurance held not void for lack of express agreement as to company in which insurance was to be placed, duration of risk, amount of premium, and subject of credit to insured therefor.

**9. Insurance ⟨key⟩131(1)—Insurance contract need not be in writing, unless required by statute or other positive regulation.**

Unless forbidden by statute or other positive regulation, it is not necessary to validity of contract to insure that it be in writing.

**10. Insurance ⟨key⟩130(1)—Minds of parties must have in some way met relative to elements of insurance contract, in order that it constitute valid contract.**

In order that contract to insure constitute a valid contract, it is necessary that minds of parties be shown to have in some way met in regard to elements of contract.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by the Licking Valley Milling Company against the Ætna Insurance Company of Hartford, Conn. Judgment for plaintiff, and defendant brings error. Affirmed.

Joseph S. Laurent, of Louisville, Ky. (Robert G. Gordon, of Louisville, Ky., on the brief), for plaintiff in error.

Robert C. Simmons, of Covington, Ky. (Shelley D. Rouse and Wm. A. Price, both of Covington, Ky., and L. P. Fryer, of Butler, Ky., on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is to review a judgment for defendant in error (plaintiff below) upon an alleged policy of fire insurance on plaintiff's mill, machinery, grain, etc., therein.

[1] 1. On the threshold we are met with the suggestion, in the brief of plaintiff in error on the merits, that the bill of exceptions be stricken from the record or disregarded because the assignment of errors was not filed "at or before the settling of the bill of exceptions," as directed by the first paragraph of our rule 10, entitled "Bills of Exceptions." We are disposed to treat the nonobservance of this provision as not invalidating the bill of exceptions, for the reason, if for no other, that the bill seems to have been settled without objection on that score, and was included by stipulation of counsel in the list of papers which "should

constitute the entire record on writ of error."

[2, 3] 2. At the conclusion of trial by jury each party (without reservation) asked the court for direction of verdict in its favor upon all of the issues. The court was thus empowered to pass upon the facts necessary to decision, and this court is bound to accept the fact conclusions of the trial court, so far as supported by any substantial testimony. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Minahan v. Gd. Trunk Western Ry. Co. (C. C. A. 6) 138 F. 37, 41; Thomas-Bonner Co. v. Hooven, etc., Co. (C. C. A. 6) 284 F. at page 392. Judgment was entered for plaintiff for the amount of the loss.

3. Coming to the merits: Plaintiff was the owner of the mill in question, located at Boyd, Ky. It desired $5,000 insurance on the mill building, etc., $5,000 on engine, boilers, machinery, etc., and $2,000 on grain and seeds and had agreed to place the insurance with one Bennett, an insurance agent at Boyd, who had no agency for defendant. Bennett made application for the insurance by telephone to one Stone, defendant's agent at Cynthiana, who as defendant's representative took applications for, wrote and countersigned policies (blanks for which were provided him with the signature of the president already stamped or printed on them). Thereupon Stone, on September 11, 1923, wrote in favor of plaintiff a uniform standard fire insurance policy for $12,000 upon the property in question, divided as applied for, for a term of six months next ensuing, on a stated premium therefor of $193.20, sending (in connection with his daily report) one copy to defendant and another to the actuarial bureau at Louisville. The fire occurred January 26, 1924.

Defendant denies that the policy written by Stone ever became operative. The premium was not in fact paid or tendered before the fire, but it was tendered by plaintiff and refused by defendant after the fire. Until that time the original policy had apparently remained in Stone's possession. After the fire defendant furnished plaintiff blank proofs of loss, together with copy of the policy which Stone had written.

Defendant contends that, as matter of law, no valid written contract of insurance was made for lack of delivery and no valid oral contract for lack of agreement as to (a) the company in which the insurance was to be placed; (b) the duration of the risk; (c) the amount of the premium; and (d) the subject of credit to plaintiff for the premium.

Stone testified that he represented two companies besides defendant, that he had previously brokered one or two policies for and divided commissions with Bennett on insurance which the latter could not write in companies he represented; that he had at one time written $10,000 on the contents of the building in Hartford, but had never written any insurance upon the building; that in his conversation with Bennett the latter asked him if he could place $12,000 of insurance for plaintiff, $5,000 on building, $5,000 on machinery and $2,000 on contents; that he told Bennett that the latter knew that sort of insurance was extremely hard to place, but he would endeavor to place it for him, but for him (Bennett) not to regard it insured until he (Bennett) heard from him (Stone); that after this he had his business associate "issue" the policy, which he left in his office until he could get returns from the company as to whether the latter would accept, "as we frequently do with our customers on a hazardous risk"; that he thereupon made out his daily report, and that when defendant received copy of that report from the actuarial bureau it wired him "not to accept" the application; that he thereupon immediately called up Bennett and told him that defendant had declined the risk; and that that closed the incident. He further said that when he wrote the policy he sent no communication to the actuarial bureau or to defendant, other than his usual daily report; that he sent no letter of explanation.

On the other hand, plaintiff's business manager, who had applied to Bennett for the insurance, testified that he was in the room when Bennett went to the telephone and called up some one, adding, "I couldn't tell who it was, but he afterwards told me it was Stone;" that he heard Bennett "mention the $10,000 and the $2,000; this was all I heard in the conversation of Bennett;" that the name of the company was not mentioned (presumably this was the conversation to which Stone referred), and that "after the conversation over the 'phone he [Bennett] told me the insurance was in effect. I asked him about when this would go into effect, but I am not positive whether he said at noon, or the following day at noon, but it was one of the two. So I went off, assured that the insurance was on." The manager further testified that Bennett

did not notify him the insurance was afterwards canceled, nor did he receive notice from any one that such cancellation had taken place; that two days after the fire he called on Stone and asked about the policy, and received the reply, "Well, you haven't got any insurance," saying further that "they had written the insurance, but that the policy was canceled in four days after he sent the policy," [1] that he (Stone) "had told Mr. Bennett to notify us and that he [Stone] had put our policy in the Ætna Insurance Company." Bennett did not testify. Defendant's counsel complains that "the district court brushed aside, as not worthy of any consideration, the testimony of Mr. Stone in this case," and argues in favor of his credibility. Questions of credibility are not for our determination. The court was not bound to believe Stone's statement that he had told Bennett that defendant had declined the risk. Stone does not say he told Bennett the policy had been canceled.

Plaintiff's president testified that on the morning after the fire he asked Stone "if he wrote the insurance on the mill, and he said he did; he said he insured it and wrote the policy, but he said he got word immediately to cancel. I told him that he did not tell us anything about it; that we thought it was insured. He said he insured it and wrote the policy, but he said the company wired him to cancel it. I told him he did not notify us of any cancellation. So he said he didn't know who the owners were." [2] Stone, in addition to disputing certain statements of plaintiff's manager and president referred to, said he did not agree to deliver the policy, nor did he agree with any one that it was to become effective prior to the time he should hear from the company. Manifestly defendant's alleged direction that the policy be canceled could not, without notice to plaintiff, destroy an immediate effect policy such as Stone had power to issue.

The trial judge did not believe Stone's testimony that the policy was not issued to take present effect, but was to take effect only if the company, after a lapse of a week or 10 days, failed to object. The judge held that, "notwithstanding Stone's testimony to the contrary, the evidence preponderates in favor of the position that there was a previous valid oral contract of insurance pursuant to which the policy was issued," and that "it is difficult, if not impossible, to account for Stone issuing the policy and reporting its issuance to the defendant and the actuarial bureau at Louisville, on the basis that there was not a previous oral contract of insurance entered into by the communication of Stone with plaintiff through Bennett. That he did so was inconsistent with the [asserted] fact that he had said to Bennett that he would endeavor to place the insurance and let him know if he succeeded, and that he should not regard the property as insured until he had heard from him definitely. The defendant and the actuarial bureau did not understand that no contract of insurance had been entered into. On the contrary, they were made to understand that there had."

[4, 5] We think that, independently of the testimony as to Bennett's statement following his telephone conversation with Stone, there was substantial evidence tending to support the above-stated conclusion of the trial judge. The weight of the testimony is not for our consideration. Kentucky Coal Lands Co. v. Mineral Development Co. (C. C. A. 6) 295 F. 257.

[6] The testimony as to Bennett's statement above mentioned was received against defendant's objection and exception. It would seem enough to say that the ground of the objection does not appear in the record (Pennsylvania Co. v. Whitney [C. C. A. 6] 169 F. 572, 575; Robinson v. Van Hooser [C. C. A. 6] 196 F. 620, 624), and that thus no error could be predicated upon the overruling of the objection.

[7] However, we are disposed to think that the statement was admissible as part of the res gestæ, for we interpret the manager's testimony as a whole as meaning that Bennett's statement was made at the close of the telephone conversation.

Defendant contends that a res gestæ statement made by a person who is not a party to a suit (Bennett represented plaintiff) "is allowable only when it is made on an exciting occasion while the speaker is influenced by external circumstances of physical shock or stress of nervous excitement which stills the reflective faculties and removes their control."

We cannot assent to this proposition, which is opposed to numerous decisions, among which are Tuckerman v. United States (C. C. A. 6) 291 F. 958, 970 (where

---

[1] As the trial judge said: "The effect of this testimony was that defendant had entered into a contract of insurance with plaintiff, but had subsequently canceled it."

[2] In view of Stone's office records, this statement, if made, could not well have been justified.

the person whose statement was admitted was neither a party nor the representative of a party to the suit), certiorari denied 263 U. S. 716, 44 S. Ct. 137, 68 L. Ed. 522; Richmond v. Foreman (C. C. A. 4) 267 F. 363, 365 (where the statements in question were of a representative of the party); In re Bradley (D. C.) 263 F. at page 447, affirmed (C. C. A. 2) 269 F. 784; Baron v. United States (C. C. A. 6) 286 F. 822, 826, certiorari denied 262 U. S. 749, 43 S. Ct. 524, 67 L. Ed. 1213. The above comment on the Tuckerman Case is substantially applicable. Chicago, M. & St. P. Ry. Co. v. Chamberlain (C. C. A. 9) 253 F. 429, 430 (where the statement in question was made by plaintiff before the accident, and in the absence of shock, stress, or excitement, and was described by the court as being "in immediate causal relation to the act—a relation not broken by the interposition of a voluntary individual wariness seeking to manufacture evidence for itself"; St. Clair v. United States, 154 U. S. 134, 149, 14 S. Ct. 1002, 38 L. Ed. 936, where the court cites with approval the definition of res gestæ found in 1 Wharton on Evidence (2d Ed.) § 259, 1879.[3]

[8-10] The judgment must therefore be affirmed, unless defendant is right in its contention that the oral contract of insurance was void for lack of agreement as to the company in which the insurance was to be placed, the duration of the risk, the amount of the premium, and the subject of credit to plaintiff therefor. We are unable to agree with this broad contention.

---

[3] The "res gestæ may be, therefore, defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may compromise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of a litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculating policy of the actors. In other words, they must stand in immediate casual [causal] relation to the act—a relation not broken by the interposition of voluntary individual wariness seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." This definition is in substance the opening paragraph of the definition of res gestæ in Words and Phrases.

Unless forbidden by statute or other positive regulation, it is not necessary to the validity of a contract to insure that it be in writing. Hartford Fire Ins. Co. v. Tatum (C. C. A.) 5 F.(2d) 169, 171; Fireman's Fund Ins. Co. v. Norwood (C. C. A. 8) 69 F. 71, 75, and cases cited; Lee v. Lewelling (C. C. A. 8) 281 F. at page 960. While the broad general rule is that a contract to insure is invalid, unless its elements are agreed upon expressly or by implication, or means are provided for their determination, the controlling authorities do not imperatively require express proof of definite agreement thereon. The better rule is that the minds of the parties must be shown to have in some way met in regard to those subjects. Eames v. Home Insurance Co., 94 U. S. 621, 626, 629, 24 L. Ed. 298, 630. In that case lack of agreement as to duration of risk was disregarded, upon the testimony of the insured that he supposed (as he had a right to suppose) that he would get the same kind of a policy which had been issued on the property before. In that case (the application was in writing) the property was fully described (as here), the amount of the insurance was named (as here), and the insured proposed a certain premium, the agent requiring a higher rate. The court thought the insured later agreed to modification in this respect. He had not paid the premium, nor had the duration of the risk been mentioned (the printed application did not call for it). In sustaining the validity of the contract to insure the court said (page 629): "It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or *understood*, and the premium paid, *if demanded*."[4] In that case the insured had had a previous policy for one year. Upon the subject of the premium it was said: "He had not paid the premium, it is true; but it is shown that this was not required until the policy was made out and delivered. * * * If parties could not be made secure until all the formal documents were executed and delivered * * * the beneficial effect of this benign contract of insurance would often be defeated and rendered unavailable."

In Hartford Fire Insurance Co. v. Tatum, supra, it was held that the duration and amount of premium payable under a parol contract of insurance were sufficiently

---

[4] All italics in this opinion ours.

established where it was obvious that the parties intended the contract should be the same as a prior builder's risk insurance contract between the same parties and at the same rate; also that in an action on a parol insurance policy evidence that the defendant's local agent customarily kept 90 per cent. of the policies written by him in his safe was held admissible upon plaintiff's failure to call for and insist upon possession of the policy. These cases illustrate the liberal tendency of the courts in sustaining oral contracts for insurance.

Upon the subject of delivery, in El Dia Insurance Co. v. Sinclair (C. C. A. 2) 228 F. 833, 838, it is said: "If there is a binding contract of insurance, the fact that the policy is not delivered until after the loss has occurred does not defeat the insured's right to a recovery under it. Mich. Pipe Co. v. Mich. F. & M. Insurance Co., 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277;[5] Commercial Insurance Co. v. Hallock, 27 N. J. Law, 645, 72 Am Dec. 379. Indeed, the courts have held that a policy drawn up and signed by the proper officers wants no further delivery. *It is a valid policy as soon as signed,* and becomes then the property of the insured, and is held by the insurer for his use." Certiorari denied, 241 U. S. 661, 36 S. Ct. 449, 60 L. Ed. 1226; and see Donnelly v. Ætna Life Insurance Co., 222 Mich. 214, 219, 221, 192 N. W. 585.

In the instant case the trial judge said: "I think, in the matter of the duration of the risk and the premium, that it must be taken that it was the understanding that

defendant was to fix them, which it did by the policy of insurance which it issued."[6] As to the failure to name the company issuing the policy, the court said: "Then as to the defendant not being named, and plaintiff not knowing that it was the party which had insured his property until after the fire, I think it must be taken that the oral contract of insurance was made by Stone on behalf of defendant, and it was liable thereon on the doctrine of undisclosed principal. If not liable on this ground, its liability may be based on the ground set forth in Mich. Pipe Co. v. Mich. F. & M. Insurance Co., 92 Mich. 482 [52 N. W. 1070, 20 L. R. A. 277]."[7]

The District Judge was of opinion that the Kentucky statute did not make Bennett defendant's agent. He found it unnecessary (as we do) to determine whether Stone constituted Bennett a subagent to advise plaintiff of defendant's action regarding the policy, for the reason that it seemed to him that the evidence preponderates in favor of the position that there was a previous oral valid contract of insurance.

As to the failure to pay premium and collect for the policy, the court said: "There was testimony tending to show a more or less general custom to give credit for the premium;" also "as to its not calling for the policy itself, the custom in that neighborhood seems to have been for the agent to hold the policy. Its failure to call for the amount of the premium and to pay it may be accounted for by negligence, but more likely by the desire to get all the credit possible."

In our opinion the court below reached the correct conclusion, and its judgment for recovery upon the policy must be affirmed.

---

[5] In Mich. Pipe Co. v. Mich. F. & M. Insurance Co., supra, at page 498 (52 N. W. 1074), it is said: "The name of the company, the location and amount of the risk, in each case, had been committed to Schmeck [the local insurance agent]. The rate of premium not having been paid or fixed by the parties, plaintiff became liable to pay the usual or going rate. The policies contained no provision that they should not become operative until the premiums were paid [such is the case here]. Schmeck had written other policies for the same parties, and had afterwards, in the usual course, collected his premiums, and no demand was made for the premiums at the time that the insurance was applied for. In determining such matters, consideration must be had for the manner in which the business has been usually carried on. To lay down the rule that in all cases the premiums must expressly be agreed upon and paid, or credit expressly given, would be contrary to the general understanding among business men, and contrary to prevailing methods."

[6] True, the rate inserted in the policy by Stone was not the published rate, but it apparently was not corrected by the bureau. It would seem a not unnatural or illogical inference that the six-months period as to the duration of the insurance was inserted as the usual period for nonpreferred risks.

[7] In that case the insurance agent represented "several companies. He was directed to place a given amount of insurance. It was not expected that he would place the entire risk in any one company. It was perhaps known that no one company would assume the whole amount of insurance. The companies were not mentioned." It was held that no liability attached to any of the companies until something further was done, but that in the selection of the companies, and in the location and distribution of the risk, Schmeck [the local agent] acted as agent for the plaintiff.