ELIZA DUNN MALLET AND SELMA DUNN JAMES v. B. R. HUSKE, III, MARY LOU HUSKE; J. S. HUSKE, INDIVIDUALLY; J. S. HUSKE, TRUSTEE FOR J. S. HUSKE, JUNIOR, MARY COOKE HUSKE AND B. R. HUSKE, III; J. S. HUSKE, JUNIOR, MARY COOK HUSKE AND TO ALL OTHER PERSONS UNKNOWN, CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE REAL PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' OWNERSHIP, OR ANY CLOUD UPON PLAINTIFFS' TITLE THERETO.

(Filed 12 June 1964.)

**1. Appeal and Error § 51—**

Where defendant introduces evidence, only his motion for nonsuit made at the close of all of the evidence need be considered on appeal.

**2. Adverse Possession § 23—**

Plaintiffs' evidence that they claimed the tract in question under definite, known and visible boundaries, that the cleared land was suitable for farming and the wooded portion for timber and firewood, that they and their father, under whom they claim, continuously farmed the cleared land or rented it out for farming and cut timber and firewood from the wooded land for more than twenty years, *is held* sufficient to be submitted to the jury on the issue of acquisition of title by adverse possession, and defendants' contention that plaintiffs' evidence is insufficient because it failed to relate any act of possession to particular portions of the tract, is untenable.

**3. Adverse Possession § 3—**

Testimony of one plaintiff that his father had a deed to the land and that plaintiffs claimed the land and thought it was theirs until they "found out his deed was not recorded" *is held* not to negate the hostile character of the possession, there being no question of lappage and plaintiffs' claim of ownership being unequivocal as to all the land embraced within the known and visible boundaries.

**4. Trial § 40—**

Where the issues submitted by the court are determinative and are sufficient to present all of the controverted facts, the refusal to submit issues in the form tendered will not be held for error.

**5. Appeal and Error § 45—**

Where the jury finds that plaintiffs are the owners of land upon evidence tending to show that they and their father before them had been in continuous adverse possession for more than 55 years, such possession is sufficient to ripen title, even though plaintiffs' father had taken possession as a tenant in common, and therefore the exclusion of evidence offered for the purpose of showing that plaintiffs' grandfather owned the land, and an instruction to the effect that there is no evidence that plaintiffs' grandfather acquired title by adverse possession, cannot be prejudicial to defendants in view of the verdict.

**6. Adverse Possession § 22—**

While a witness may not testify that a certain person "owned" the land, when the witness explains that he meant that such person was in possession of the land, the testimony is not prejudicial, since a witness may testify in regard to possession.

**7. Same—**

Testimony of declarations of plaintiffs' predecessor that he owned the land is competent for the purpose of showing the character of his possession.

**8. Appeal and Error § 41—**

The admission of evidence over objection cannot be held prejudicial when evidence of the same import is thereafter admitted without objection.

APPEAL by defendants from *Clark, J.*, September 1963 Civil Session of CUMBERLAND.

This action was instituted 25 January 1962. Plaintiffs allege: They are the sole owners of a tract of land in Fayetteville bounded on the west by Ramsey Street, on the north by the Godwin and Blue subdivision, on the east by A. G. Benton's Tokay tract, on the south by the E. M. Currin's subdivision, containing 25 acres; their father, Alexander (Sandy) Dunn, "assumed full and complete possession" of the land about 1904; his exclusive possession continued until his death in 1936; plaintiffs, only children of Alexander Dunn, with their mother until her death, have continued in exclusive possession of the property; 10 deeds have been recorded in the office of the Register of Deeds of Cumberland County purporting to convey an undivided two-thirds interest in said tract and to vest title thereto in defendants; the deeds dated in 1957, 1960, and 1961, are clouds on plaintiffs' title.

They pray that they be adjudged the absolute and sole owners of the land described, that defendants have no interest therein, and that a notation be made on the deeds recorded in the office of the Register of Deeds that they are mere clouds on the title of plaintiffs.

Defendants denied plaintiffs' claim of sole ownership. Defendants admit plaintiffs are the owners of an undivided one-third interest in

the land in controversy. They allege they own the remaining two-thirds. To support their allegations of co-tenancy, they allege: Robert Dunn died in 1905. He owned the land at his death, having occupied it adversely and continuously from 1877 until his death. Robert died intestate. He left three children, one of whom was Alexander, father of plaintiffs. His share passed by inheritance to plaintiffs. The remaining two-thirds passed by descent to those under whom defendants claim. Defendants specifically deny that Alexander Dunn, or plaintiffs, have ever claimed title adversely to them.

The court submitted, as determinative of the controversy, these issues: (1) Are the plaintiffs the owners of the land described in the complaint? (2) Are the defendants the owners of a two-thirds undivided interest in the land described in the complaint? The jury answered the first issue "yes." Having so answered, it did not answer the second issue. Judgment was entered on the verdict. Defendants excepted and appealed.

*McCoy, Weaver, Wiggins & Cleveland for defendant appellants.*
*N. H. McGeachy, Jr., Robert W. Pope and Paul L. Whitfield for plaintiff appellees.*

RODMAN, J.   Defendants' assignments of error, Nos. 20, 57 and 67, are directed to the refusal of the court to allow their motions for nonsuit. Defendants elected to offer evidence. They thereby waived the right to insist on motions made prior to the conclusion of the evidence. G.S. 1-183. Only the motion, assignment No. 67, made at the conclusion of the evidence, need be considered.

In their argument for a nonsuit, defendants say: "The evidence was insufficient to support a verdict of adverse possession in that it did not describe, identify or locate as definite areas of land within the bounds of the tract in question those parts of the property on which the alleged acts of ownership took place."

Defendants do not contend the description of the area claimed by plaintiffs is insufficient. In fact, the description used by plaintiffs is the identical description used by defendants. Their contention is that plaintiffs' evidence is not sufficient to show possession of the entire area, or to fix the boundaries of the part actually occupied. This contention is based on the erroneous assumption that there is no evidence to show that plaintiffs and their father exercised exclusive possession of the entire 25 acres.

B. H. Bill, a witness for plaintiffs, testified:

"This land from 1905 until 1936 was suitable for 2 purposes: one for farming and the other wood and timber. About half and

half, half for farming, half for timber. The portion that was suitable for farming was cleared land. From 1905 until 1936, referring only to the cleared part of the land, there was corn planted and peas and potatoes and different things like that for his use. Sandy planted some of it in time. All I can say is that he planted up until his mule died, And then, it was rented out."

Plaintiff Mallet testified that her recollection of the property began in 1915. After describing the property, she said:

"My father, Alexander Dunn, claimed title to this particular tract of land from 1915 until 1936. * * * About half of this 25 acres were cleared and about half was uncleared and in woods. The half that was cleared was suitable for farming. From 1915 to 1936 my father made use of this cleared land that was suitable for farming. He made use of it every year from 1915 to 1936. * * * I know that my father, "Sandy" Dunn or Alexander Dunn rented out a portion of this cleared land for farming. He was paid rent for this land that was rented out. * * * The other portion of that land that was not cleared was suitable for firewood and for selling timber and selling cord wood. My father, "Sandy" Dunn, sold timber and timber rights on this uncleared portion to Mr. James Purvey. * * * I know that my father made use of the wooded portion of the tract from 1915 to 1936. He cut cord wood and brought it to town and sold it and he cut wood for the home use to burn in the fire at home. He would cut wood for firewood there for the house all winter and from as far back as I can remember until 1935. From 1915 to 1936 my father "Sandy" cut trees out there for firewood for about 23 years. He cut them every year. He cut timber to haul it in for cordwood every winter from 1915 to 1936. He would take the cordwood to town. * * * [H]e had a mule, a cow and a bull and a calf which he grazed on this land. He did that every year between 1915 and 1936. From 1915 to 1936 this piece of land was open and visible publicly. * * * No one ever tried to put my father off this land."

After her father's death, she, her mother and sister, rented and farmed the cleared portion of the land. They sold timber from the woods portion.

"No one else received any of the money but me and my mother and sister. Nobody else claimed a portion of the money. Besides that timber that was sold off, there was wood cut and pre-

pared for my mother, fuel to burn. That was done every year from 1936 to 1956. * * * I testified that the other half of that property was suitable for timber and firewood. It has been cut out so much until I imagine it is not quite large enough now; it might have a few trees large enough for timber but not enough to go through the process of selling. At the present time the property is surrounded by subdivisions and has been for many years. It is good property for residential development. I could not say that this is the best use that could be made for it, of it; it could be made good farm land and could be maybe timber again. Right now it is surrounded by houses and has been surrounded by houses for a number of years."

Several witnesses testified that the possession exercised by "Sandy" Dunn, his widow and children, was so extensive and continued for such length of time that the entire tract was generally referred to in the community as the "Sandy Dunn land."

*Walker, J.,* writing in *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347, gave this definition of adverse possession: "It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner." He supports his definition by an analysis of many of the earlier cases defining adverse possession. The definition there given has been quoted with approval on numerous subsequent occasions. *Holmes v. Carr,* 172 N.C. 213, 90 S.E. 152; *Clendenin v. Clendenin,* 181 N.C. 465, 107 S.E. 458; *Everett v. Sanderson,* 238 N.C. 564, 78 S.E. 2d 408.

*Avery, J.,* writing in *Shaffer v. Gaynor,* 117 N.C. 15, 23 S.E. 154, said: "A possession that ripens into title must be such as continually subjects some portion of the disputed land to the only use of which it is susceptible, or it must be an actual and continuous occupation of a house or the cultivation of a field, however small, according to the usages of husbandry. (Citations). The test is involved in the question whether the acts of ownership were such as to subject the claimant continually during the whole statutory period to an action in the nature of trespass in ejectment instead of to one or several actions of trespass *quare clausam fregit* for damages."

However tested, the evidence of plaintiffs in this case is, in our opinion, sufficient to justify a jury in finding that for more than twenty years plaintiffs, and those under whom they claim, had continuous, open, notorious, and actual possession of the entire tract of land. During all of that period they were subject to actions in ejectment. The court correctly overruled the motion for nonsuit.

Plaintiff Mallet testified:

> "My father, Alexander Dunn, claimed title to this particular tract of land from 1915 until 1936. Yes, sir, Sandy Dunn or Alexander Dunn did have a deed to *this property*." (Emphasis supplied.)

On cross examination she said:

> "Yes, sir, I testified that my father had a deed. Yes, sir, I seen the deed. I don't know if it was ever recorded. Yes, sir, I thought this land was my father's. He said it was his land and I believed him. Yes, sir, I thought this was my father's. Yes, sir, I thought it was up until the time I went to see Mr. John H. Cook (attorney) in 1955. At that time I found out that his deed wasn't recorded."

Defendants argue the quoted testimony defeats plaintiffs' claim of title by adverse possession. They rely on *Gibson v. Dudley*, 233 N.C. 255, 63 S.E. 2d 630, and *Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851, to support their contention. Defendants misinterpret the import of the cases they cite. Those cases merely enunciate the principle that possession beyond the boundaries described in the deed is not adverse to the true owner if there is no intent to assert title beyond the occupants' boundaries. That rule has no application to this case. Here, if the witness is to be believed, the area occupied conformed to the boundaries in the deed which their father had. Father and children, each asserted title to the highway and to the lines of their neighbors. Here, there is no question of lappage.

The deed could not be found, and neither the date of the deed, nor the names of the grantors were known. Was it such a conveyance as would constitute color ripening into good title by seven years? G.S. 1-38. The record does not disclose. The deed to which the witness referred neither hinders nor helps plaintiffs.

Defendants tendered as the first issue: "Have the plaintiffs and their predecessors in title been in the adverse possession of the lands described in the complaint under known and visible lines and boundaries for twenty years?" Instead, the court submitted the issue set out in the statement of facts. Defendants assigned as error the court's refusal

to submit the issue in the form tendered by them. The assignment is lacking in merit. *Conference v. Miles,* 259 N.C. 1, 129 S.E. 2d 600; *Wood v. Insurance Company,* 245 N.C. 383, 96 S.E. 2d 28; *Crowell v. Air Lines,* 240 N.C. 20, 81 S.E. 2d 178. The charge as given required the jury to find each of the facts enumerated in the issue tendered by defendants.

The court also charged:

> "Now, there is no record title involved in this case, Members of the Jury; neither the plaintiffs nor defendants contend they have any record title, or that they have legal, lawful record title. Both rely on title by adverse possession for the statutory period of twenty years. Now Robert Dunn, the original Robert Dunn, died in 1905; there is some evidence tending to show that he, Robert Dunn, lived on the home place across the highway from the tract in question for some years prior to his death, but (I charge you as a matter of law, Members of the jury, that it has not been established in evidence that Robert Dunn was the owner of this land at the time of his death; there is not sufficient evidence to establish that Robert Dunn acquired title by adverse possession for a period of twenty years prior to his death.)"

Defendants assigned as error that portion of the charge included in parentheses. They do not except to that portion of the charge stating there is no evidence of record title in Robert Dunn. They merely challenge that portion stating there is no evidence that Robert Dunn had possession for twenty years. We have carefully examined the record. No witness testified to that fact. We do not understand that defendants contend there is any direct evidence to that effect. They base their contention that there is evidence from which a jury could find that Robert Dunn had acquired title by adverse possession by the testimony of plaintiffs and other witnesses that the property was known as the Robert Dunn property.

Defendants' assertion of error is answered by Ervin, J., who said in *Everett v. Sanderson, supra,* "The testimony of some of the witnesses that it was generally reputed in the community during the possessory period that the *locus in quo* belonged to L. W. Everett was not competent to establish title. *Sullivan v. Blount,* 165 N.C. 7, 80 S.E. 892; *Locklear v. Paul,* 163 N.C. 338, 79 S.E. 617; Stansbury's North Carolina Evidence, section 148."

Another complete answer to this contention lies in the fact that the jury has found that plaintiffs were the sole owners. They could not have found that fact without finding that Alexander and his children

had exercised exclusive adverse possession of the land in controversy for more than twenty years, since 1905. Such possession would suffice to bar everyone, including co-tenants. *Brewer v. Brewer*, 238 N.C. 607, 78 S.E. 2d 719; *Peel v. Calais*, 224 N.C. 421, 31 S.E. 2d 440; *Winstead v. Woolard*, 223 N.C. 814, 28 S.E. 2d 507. It is immaterial, therefore, whether Robert Dunn was in fact the owner of the property in 1905.

Defendants offered, and the court excluded, a deed dated January 1877, from C. B. Mallet and others, to Abram Dunn for a tract containing 12 acres. The description of this tract begins at William Dunn's northwest corner in the western edge of the Raleigh Plank Road (now Ramsey Street.) They then offered a mortgage, dated April 3, 1894, from William Dunn to H. W. Lilly. The description there given begins at Robert Dunn's northwest corner on the Raleigh Plank Road. The courses and distances there given are substantially the same as those appearing in the deed from Mallet to Abram Dunn. They next offered a deed, dated in March 1905, from Lilly to Abram Dunn for what seemingly is the land mortgaged from William Dunn to Lilly.

Defendants, as we understand their contention, maintain these deeds, by the call for *William Dunn's* northwest corner in the Mallet deed and for *Robert Dunn's* northwest corner in the mortgage to Lilly, and his deed to Abram Dunn, establish the fact that William Dunn and his son, Robert Dunn, were in possession of a tract of land adjoining that described in the instruments offered from 1877 to 1905, and this evidence they say was sufficient to support a finding that the land in controversy was owned by Robert at his death in 1905. We do not agree with defendants' premise or conclusion, but accepting the contention as correct, the asserted error in excluding the deed cannot be prejudicial. This is so because of the answer to the first issue.

B. H. Bill, witness for plaintiffs, testified he had known the land in controversy for 65 years. He was asked if he knew who claimed title to the land from 1905 to 1936. He answered, "Yes, Sandy Dunn." The court then said, "I am going to strike the word title." Thereupon, counsel inquired, "Mr. Bill, during the period 1905 until 1936, do you know who owned this land?" Defendants objected and the objection was overruled. The witness answered, "Sandy Dunn." The question was not framed in accordance with the court's ruling and, if there were no explanation of what the witness meant to say, the testimony that Sandy Dunn owned the land would not be competent. A witness may not answer the very question to be submitted to a jury. The court seemingly recognized this fact. It inquired, "What do you mean, he owned it? How do you know he owned the land?" The witness answer-

ed, "Well I have knowed the land all my life, practically, see, and I know Sandy Dunn was in possession of the land." Court: "And that is what you mean when you say he owned the land?" Answer: "Yes." It was competent for the witness to testify who had possession of the property for the described period. The assignment directed at this evidence cannot be sustained.

Finally, defendants claim they were prejudiced by the admission of declarations made by Alexander Dunn with respect to his claim of ownership. Defendants offered evidence of declarations by Alexander Dunn that his possession was not adverse to the claims of his co-tenants. Plaintiffs, on rebuttal, asked their witness, Bill: "What statement, if any, did Sandy Dunn make to you in regards to who was the owner of this 25 acres in contest in this lawsuit?" Defendants' objection was overruled. The witness answered, "Sandy Dunn."

The witness thereafter testified without objection: "Sandy Dunn said he owned all interest in all of it. He made that statement when we were on the 25 acre tract investigating about selling some timber."

Defendants' claim of prejudicial error cannot be sustained. This is true for two reasons. (1) Defendants waived their exceptions to the competence of the evidence by failing to object to the subsequent testimony of the witness to the same effect. (2) The evidence is competent to show the character of the possession asserted by the occupant. *Everett v. Sanderson, supra; Smith v. Moore,* 149 N.C. 185, 62 S.E. 892; *Bunch v. Bridgers,* 101 N.C. 58, 7 S.E. 584; *Phipps v. Pierce,* 94 N.C. 514; *Smith v. Reid,* 51 N.C. 494; *Richmond Cedar Works v. Foreman Blades Lumber Company,* 267 Fed. 363; *Thacker v. Hicks,* 224 S.W. 2d 1; *Lamons v. Mathes,* 232 S.W. 2d 558; Stansbury's North Carolina Evidence, section 160; 3 Am. Jur. 2d 349; 2 C.J.S. 834; 31A C.J.S. 663.

No error.