STATE v. BROOKS

STATE OF NORTH CAROLINA, PLAINTIFF, v. JOE C. BROOKS, SR. AND WIFE, ANNE BROOKS; THELMA B. McEACHERN, SINGLE; JIM BROOKS AND WIFE, ALENE W. BROOKS; FRANCES B. FURLONG, SINGLE; MARY BROOKS, SINGLE; LULA BROOKS, SINGLE, DEFENDANTS

No. 68SC55

(Filed 14 August 1968)

1. Adverse Possession § 1—  definition

Adverse possession consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser; it must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that the possessor is exercising thereon the dominion of owner.

2. Adverse Possession § 25;   Water and Watercourses § 7—  sufficiency of evidence

In a civil action by the State for trespass, for removal of cloud on title and for removal of objects placed by defendants in the navigable streams of marshlands allegedly owned by the State, the evidence is sufficient to justify the jury in answering the issue of ownership in favor of the defendants on the theory of thirty years adverse possession under known and visible lines and boundaries, where there is evidence that the defendants claimed the tract under definite, known and visible boundaries, that the land was suitable for hogs and cattle, and that the defendants had continuously used the land for more than 30 years as pasturage, for oyster-bedding, and for fishing.

3. Trial § 31—  directed verdict

Where all the evidence points in the same direction with but a single inference to be drawn, the court may instruct the jury that if they believe the evidence, they may find a certain verdict.

4. Trial § 31—  directed instruction — burden of proof

A directed instruction in favor of the party having the burden of proof is error.

APPEAL by plaintiff from Hall, J., October 1967 Session, BRUNSWICK Superior Court.

This is a civil action for trespass on lands of plaintiff, for removal of cloud on title and removal of objects placed by defendants in the navigable streams of marshlands allegedly owned by plaintiff. By amendment to the complaint, plaintiff alleged that defendants were preventing the general public from using the navigable streams in the marshlands and prayed for issuance of a mandatory injunction requiring defendant Joe C. Brooks, Sr. to remove the obstructions

placed in the navigable streams. Defendants answered, denying plaintiff's title and alleging title to the marshlands in them. The allegations contained in the amendment to the complaint were deemed denied by the court. Upon hearing, the jury returned a verdict for defendants on all issues. From judgment thereon, plaintiff appealed.

*T. Wade Bruton, Attorney General, by. Millard R. Rich, Jr., Assistant Attorney General, and Rountree and Clark by George Rountree, Jr. and John Richard Newton, for plaintiff appellant.*

*Herring, Walton, Parker and Powell by Ray H. Walton, and E. J. Prevatte for defendant appellees.*

MORRIS, J.

Our study of the record in this case leads us to the conclusion that the judgment below must be upheld.

Plaintiff first contends that the evidence was totally insufficient to support a finding of ownership in the defendants based on adverse possession under color of title. Assuming the correctness of this position, the contention is, nevertheless, without merit. The case was submitted to the jury on the theory of thirty years adverse possession under known and visible lines and boundaries. The trial court gave no instruction with respect to adverse possession under color of title, and none was requested, nor was any issue presented requiring a finding with respect to color of title.

Therefore, as we view the case, the only question with respect to ownership of the marshlands presented by this appeal is the sufficiency of the evidence with respect to thirty years adverse possession. The parties stipulated that Exhibit 1, introduced by plaintiff, "is the map duly recorded in this County of the property claimed by the defendants and the plaintiff". Plaintiff contends that defendants failed to bring forth any evidence that they were ever in open, notorious, hostile and sole possession of the marsh under known and visible boundaries.

[1]    In *Mallet v. Huske,* 262 N.C. 177 at 181, 136 S.E. 2d 553, Rodman, J., quoting from *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347, gave this definition of adverse possession:

"It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to

show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner."

[2]     Testing the competent evidence by that definition, we are constrained to hold that the evidence is sufficient to justify the jury in answering the issue in favor of defendants.

Joe C. Brooks, one of the defendants, testified that he is 60 years of age; had lived withon 100 to 500 feet of the property in question all of his life; that he knows the lines are on the ground as shown by the map agreed to; that the property is bounded on the east by D. S. Frink or the D. S. Frink estate, on the south by Ocean Isle Beach, on the west by M. C. or Manley Gore; that the inland waterway was cut through the northern portion of the property in 1934; that a portion of the property was leased to International Paper Company for the purpose of building a dock extending into the waterway for the unloading of pulpwood from about 1937 to 1956; that from his father's death in 1942 he and his brothers and sisters got oysters and clams out of the area; that his father had run cattle and hogs on it as far back as he could remember until they dug the inland waterway; that he worked with the cattle and hogs since he was 6 or 7 years old; that they would have to take the cattle off the marsh in about May for about 2 months and keep them out until about August; that they worked cattle from the Frink line back to Mad Inlet; that they used the cattle on the beach and in all the marshland in there; that his father gave the Conservation and Development Department, using PWA labor, permission to plant oysters one year, but refused permission the next year and after his refusal they did not attempt to plant oysters; that his grandfather lived in the same area in the old home next to his parents; that he had fished the creeks and had seen others fishing in them until the dredge came in to clean out the waterway and dumped mud in the upper part and had seen people oystering in there in boats; that a Mr. Somerset grazed cattle there with the witness' father; that the Frink's cattle never did stray over on his father's property except once in a while; that he put chicken crates and myrtle bushes in the creeks "up on the sides of the creek" and next to the grass in 1966, and erected signs indicating oyster gardens and shellfish areas; that the signs were put at the four corners of the property; that he didn't mark the objects placed because they were "up in the edge of the grass. The

grass would take care of it"; that he had bought oyster shells but they sank in the mud.

James F. Brooks testified that he was 67 years of age, also a son of George E. Brooks; that the eastern line of the property had been marked with a stake as long as he could remember; that the south end of the property is bounded by marsh, woods and the Atlantic Ocean; that the west line, the Gore line, is marked on the mainland going across to the ocean; that his father and uncle conducted a general mercantile and naval stores business on the property; that their dock extended out from the mainland into Still Creek; that they bought and sold clams and had schooners coming in and loading and unloading at Tubbs Inlet and the mainland; that the dock reached into Still Creek about half way of what is now the inland waterway; that the dock was there when he first remembered it when he was about 15 years of age; that his father had a warehouse there as long as he could remember; that his father used the property as pasture for cattle, horses and marsh ponies; that there was a cattle path entering the marsh right in front of the old home; that he helped with the cattle operations; that they took them out of the marsh in the spring for about 3 months and put them in a lot back of the house; that when he was about 15 or 16 years old his father fenced in the property; that a fence was built on the east line and a fence was built on approximately Mr. Gore's line on the west; that iron stakes were put down on both sides; that he guessed some of the stakes were still there; that he had not seen anyone clamming or shrimping in there because of the mud; that he didn't know how far out in the marsh the fence went; that a stake was put in the southwest corner, in the Gore corner, in the southeast corner; that he did not know who put them in or when, but knew they were put there; that the fence was put up because of the stock law and went around the northern end and to the south out in the sound.

Mr. Robert J. Somerset testified that he is 62 years of age; that George Brooks and J. W. Brooks had a warehouse and dock extending into Still Creek used for cargo boats bringing in fertilizer and taking out rosin and turpentine; that the Brooks family used the marshland for pasture and fishing; that his grandfather had grazed cattle on the property; that at one time it was open range but Mr. Brooks had an area of marsh and hill land fenced when the stock law became effective; that his grandfather took his cattle out because he didn't want to absorb a part of the fencing cost; that the fence went to the point where the marsh was soft enough for cattle to bog down; that the roads into the property had gates across them with the exception of the road that came right to the

Brooks home; that the Brooks family had a fish stand on the eastern channel on the beach side adjoining the marsh and on the other side a fishing stand, and one just below the mouth of Simmons Creek; that these fishing points were operated from the time he was about 12 years old until the inland waterway was cut and the places filled in to the point they were no longer used; that his father operated one of the points and he helped him; that when the fish were divided, one share was laid out for Mr. Brooks; that the fence extended about 2 miles east and west of the Brooks home and down to the boggy area north and south; that in some areas it would go 150 feet — just until it was boggy enough; that the fenced area was known as the Brooks pasture.

The trial court correctly submitted the question of adverse possession to the jury.

The plaintiff further contends that it was entitled to a directed verdict on the Fourth Issue: "Have the defendants obstructed navigable waters of the State of North Carolina as alleged in the complaint?" Plaintiff makes this contention and argument under assignment of error 1, which is based on its exception No. 1 — to the signing of the judgment, and assignment of error No. 2 based on exception No. 2 — the overruling of plaintiff's motion for judgment as of nonsuit on defendants' issue of ownership, the first issue, and exception No. 3 — overruling of plaintiff's motion to set aside the verdict and for a new trial. Regardless of whether the question is properly before the Court, we find the contention to be without merit. The court properly instructed the jury that the burden of proof on the Fourth Issue was on the plaintiff, instructed them with respect to the applicable law, and gave the contentions of the parties. Plaintiff has not excepted to any portion of the charge.

[3, 4]    Where all the evidence points in the same direction with but a single inference to be drawn, the court may instruct the jury that if they believe the evidence, they may find a certain verdict. *Morris v. Tate*, 230 N.C. 29, 51 S.E. 2d 892. McIntosh, N. C. Practice and Procedure 2d, § 1516. Here, we cannot say that only a single inference could be drawn from the evidence with respect to the placing of obstructions by defendants. Additionally, "A directed instruction in favor of the party having the burden of proof is error". *Shelby v. Lackey*, 236 N.C. 369, 370, 72 S.E. 2d 757. Here, the burden of proof on the Fourth Issue was on the plaintiff.

Affirmed.

CAMPBELL and BRITT, JJ., concur.